UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
IN RE:                                          )
SCOTT R. DEEDON,                                )       Case No. 07-32989 (ASD)
                                                )
        DEBTOR.                                 )       CHAPTER 7
-----------------------------------------------------)
BARBARA H. KATZ, TRUSTEE,                       )
                                                )
        PLAINTIFF.                              )
                                                )
v.                                              )       Adv. Pro. No. 08-03068
                                                )
SCOTT R. DEEDON,                                )
                                                )
        DEFENDANT.                              )
----------------------------------------------------

_____

APPEARANCES:

Barbara H. Katz, Esq.                                   Attorney for Plaintiff
57 Trumbull Street
New Haven, CT 06510-1004

Ellery E. Plotkin, Esq.                                 Attorney for Defendant
Law Offices of Ellery E. Plotkin, LLC
777 Summer Street, 2nd Floor
Stamford, Connecticut 06901
_____


**MEMORANDUM OF DECISION ON COMPLAINT
TO DENY DISCHARGE**


Albert S. Dabrowski, Chief United States Bankruptcy Judge

1

## I. INTRODUCTION

In this adversary proceeding the Chapter 7 Trustee, through a Complaint filed May 16, 2008, seeks to deny the Debtor his bankruptcy discharge pursuant to Bankruptcy Code Sections 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A). For the reasons stated hereafter, the Court finds and concludes that the Trustee has not satisfied her burden of proof as to the Debtor's fraudulent intent. Accordingly, judgment shall enter in favor of the Debtor who shall receive his discharge.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1).  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J).

## III. BACKGROUND

The following background is derived from the testimonial and documentary evidence received at trial, as well as the Court's own noticing of the official files and records of this case and adversary proceeding.

*A. Procedural Background*

On December 18, 2007 (hereafter, the "Petition Date"), Scott R. Deedon (hereafter, the "Debtor") commenced the instant bankruptcy case by filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code, upon which relief was ordered. Thereafter Barbara H. Katz, (heretofore, the "Trustee" and hereafter, the "Trustee" or

"Plaintiff") was appointed as trustee of the resulting bankruptcy estate. On May 16, 2008, the Trustee initiated the present adversary proceeding by filing a complaint (hereafter, the "Complaint") objecting to the Debtor's discharge. The Complaint, initially comprised of five counts, presently asserts three counts and statutory predicates for denial of discharge: Bankruptcy Code Sections 727(a)(2)(A) & (B) (concealing property of the bankruptcy estate), and 727(a)(4)(A) (false oaths and accounts)[1].

More specifically, the Plaintiff alleges in Counts One and Two that the Debtor knowingly and fraudulently concealed property of the bankruptcy estate, pre- and post-petition, respectively, by failing to disclose his interest in a Note and Mortgage. The Plaintiff alleges in Count Four that the Debtor knowingly and fraudulently made one or more false oaths or accounts in connection with his bankruptcy case and related Schedules, and by answering falsely under oath questions related to the Note and Mortgage at the Section 341 meeting of creditors, *inter alia*.

Trial commenced on December 8, 2008, with the testimony of Nancy Sienkiewicz, (an attorney who mediated the divorce), Richard Kilcullen (the Debtor's original bankruptcy counsel),[2] Rebecca Guendelsberger (an attorney engaged by the Debtor to seek a modification of his child support obligations and who referred the Debtor to attorney Kilcullen for bankruptcy consultation), and Susan Sarnecky (a paralegal in the Law Office

---

[1] On December 8, 2008, immediately prior to the commencement of trial, the Trustee orally withdrew Counts 3 and 5 of the original complaint, which sought a denial of discharge pursuant to Sections 727(a)(3) (failure to keep or preserve books and records), and 727(a)(4)(D) (withholding information/documents from the Trustee), respectively.

[2] Attorney Richard Kilcullen represented the Debtor in connection with the preparation and filing of his bankruptcy petition until the Debtor terminated such representation on June 1, 2008. Subsequently, the Debtor retained Attorney Ellery E. Plotkin.

3

of Attorney Kilcullen). Trial was thereafter continued to and concluded on December 22, 2008, with the testimony of the Debtor, whose testimony the Court finds credible in all respects.

## *B. Factual Background*.

The following facts are undisputed and relate to each of the surviving three Counts in the Complaint. On September 10, 2003, the Debtor's marriage to Linda Deedon was dissolved by a divorce decree in the Superior Court for the State of Connecticut. As part of that divorce the Debtor and Ms. Deedon entered into an agreement (hereafter, the "Agreement") regarding, *inter alia*, the division of certain jointly owned real property. Pursuant to Article 8.1 of the Agreement, the Debtor deeded to Ms. Deedon by quit claim his interest in their former marital home (hereafter, the Property") in exchange for which Ms. Deedon paid the Debtor $100,000.00. In addition, pursuant to Article 8.2 of the Agreement, Ms. Deedon executed a demand promissory note in favor of the Debtor in the principal amount of $55,000.00 plus interest (hereafter, the "Note"), payable to the Debtor on the earlier of June 1, 2011, or upon the sale of the Property. The Note is secured by a duly recorded mortgage (hereafter, the "Mortgage") in favor of the Debtor.

## IV.  DISCUSSION

### A.  *Burden of Proof*

Appreciative that denial of a debtor's discharge "imposes an extreme penalty for wrongdoing," the United States Court of Appeals for the Second Circuit has instructed that Section 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" State Bank of India v. Chalasani (In re Chalsani),

92 F.3d 1300, 1310 (2d Cir.1996).  Nevertheless, the relief of a bankruptcy discharge is not an absolute right, but rather, a privilege accorded honest debtors who provide full and honest disclosure to creditors and otherwise satisfy bankruptcy statutory obligations.

The party objecting to the granting of a discharge bears the ultimate burden of persuasion by a preponderance of the evidence in an adversary proceeding pursuant to Section 727(a).  Fed.R.Bank.P. 4005.  *Cf.* Grogan v. Garner, 498 U.S. 279 (1991).  If the objecting party sufficiently establishes its prima facie case, the burden shifts to the debtor to set forth credible evidence to rebut the prima facie case.  In re Bodenstein, 168 B.R. 23, 28 (Bankr. E.D.N.Y. 1994).

## *B.  Governing Law – Bankruptcy Code Sections 727(a)(2)(A)&(B) and (a)(4)(A).*

The provisions of Code Section 727 implicated in the instant proceeding provide in pertinent part as follows:

(a) The court shall grant the debtor a discharge, unless—

   (2)    the debtor, *with intent to* hinder, delay, or *defraud* a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

        (A) property of the debtor, within one year before the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition;

\* \* \* \*

   (4) the debtor knowingly and *fraudulently*, in or in connection with the case—

        (A) made a false oath or account;

\* \* \* \*

5

11 U.S.C. ¶ 727 (2005) (emphasis added).

### *C. COUNT ONE - Section 727(a)(2)(A) - Pre-Petition Concealment of Property*.

Count One of the Complaint seeks to deny the Debtor his discharge pursuant to 11 U.S.C. § 727(a)(2)(A) upon an assertion that the Debtor, by failing "to disclose to the Plaintiff [the duly appointed Trustee] the existence of the Note and Mortgage . . . knowingly and fraudulently concealed property of this bankruptcy estate within one year before the date of filing of the petition."  Complaint, Count One, ¶¶ 12 & 13.

To sustain an objection to discharge under Section 727(a)(2)(A), the Plaintiff must prove that the Debtor's act or undertaking:

> (1) occurred within one year prior to the commencement of the case;
> (2) *was performed with actual intent* to hinder, dely *or defraud* a creditor;[3] or an officer of the estate charged with custody of property;
> (3) was done by the debtor or his duly authorized agent; and
> (4) involved *concealing*, destroying, transferring, or removing debtor's property, or permitting any of these acts to be done.

E.g., In re Maletta, 159 B.R. 108, 115-116 (Bankr. D. Conn. 1993) (emphasis added).  See also In re Silverstein, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993) .

Application of the facts of this matter to Count One and Section 727(a)(2) is somewhat problematical as Count One specifically alleges "[t]he Debtor failed to disclose to the Plaintiff [Trustee] the existence of the Note and Mortgage" in the year prior to the Petition Date. Count One, ¶. 12. However, the Trustee did not exist as Trustee at anytime in that year. The Debtor, however, challenges the Complaint on the simple claim that the

---

[3]The Complaint does not allege that the Debtor acted with the intent to hinder, delay, or defraud creditors.

Debtor lacked the fraudulent intent necessary to sustain an objection to discharge.

Accordingly, to facilitate the resolution of this proceeding, which indeed turns on the Debtor's intent, the Court will simply focus on that issue.

Concealment of assets, without more, is not enough to deny discharge under Section 727(a)(2); rather, there must be a showing of an actual intent to hinder, delay, or defraud creditors or, as alleged in this Count, the Trustee . E.g., In re Bernard, 99 B.R. 563 (Bankr. S.D.N.Y. 1989.)  See also In Re Koch, 83 B.R. 898 (Bankr. E.D. Pa. 1988). Rarely, if ever, does a debtor admit to intentionally hindering, delaying or defrauding his creditors or an officer of the estate. Consequently, courts must often look to various "badges of fraud" to infer fraudulent conduct on behalf of a debtor transferring away or concealing valuable assets prior to a voluntary bankruptcy filing. See, e.g., In re McElroy, 229 B.R. 483 (Bankr. M.D. Fla. 1998); see also In re Hunter, 229 B.R. 851 (Bankr.  M.D. Fla. 1999). However, none of the traditional badges of fraud are particularly helpful here.

After reviewing the entire record of this proceeding, the Court cannot find the Debtor's pre-Petition Date actions, claimed by the Plaintiff to be concealment, were deliberate attempts to conceal property of the bankruptcy estate attended by an actual intent to defraud. At the heart of the alleged "concealment" is the Debtor's answer "None" in connection with Schedule B, line 16 ("Accounts receivable").  In filling out an asset and liability questionnaire (Exhibit N) (hereafter, the "Questionnaire") for use of his counsel Richard Kilcullen (hereafter, "Kilcullen ") in preparing his bankruptcy petition and related schedules, the Debtor  marked "Yes" or "No" for the majority of the assets and liabilities.

listed therein. However, the Debtor left answers to some questions in the Questionnaire blank due to his perceived need for further clarification from counsel regarding those items left blank. Specifically, as to the "Accounts receivable" box marked "None" in the Schedules, the Debtor testified that he left the "accounts receivable" box blank in the Questionnaire because he "did not consider [the Note and Mortgage, and money owed thereunder] to be an asset . . . ", further noting that he "didn't know how to fill that part out on the questionnaire" and desired to discuss the particular question with counsel. (Deedon Deposition Transcript, dated November 11, 2008, at 19-20).[4] In fact, he told Kilcullen's paralegal assistant "that he need to talk to Attorney Kilcullen about paragraph 16 – accounts receivable". Tr. at 2:31:00.[5] Nevertheless, that conversation never occurred, someone in Kilcullen's office checked the relevant box "None" without the Debtor's knowledge,[6] and filed the Petition and Schedules with the Court.

While it is undisputed that in the Debtor's original bankruptcy schedules the "account receivable" question was answered "None", there is insufficient evidence to overcome his credible testimony that the answer "None" was not his, as he left the answer blank in the Questionnaire; that someone in Kilcullen's office, when preparing the actual documents to be filed, changed it to "None" without his knowledge, and that he did not act at anytime with intent to defraud.

The answer "None" to the query "Accounts receivable" in the Schedules had the

---

[4]References to Deposition Transcripts are hereafter cited as "DT".

[5]"Tr." refers to the audio record of the trial date of December 22, 2008.

[6]See the discussion of the Debtor's answer "yes" at the Section 341 meeting to the question "Is all the information in those documents true, complete and accurate", *infra*, Part IV, para. E, pages 12-13.

8

effect of concealing the Debtor's interest in the Note and Mortgage. The requisite intent to hinder, delay or defraud a creditor or the Trustee, however, cannot spring from these circumstances. Accordingly, judgment shall enter for the Debtor on Count One.

### D. COUNT TWO - Section 727(a)(2)(B) - Post-Petition Concealment of Property.

The Trustee's Second Claim for Relief is brought pursuant to Section 727(a)(2)(B) upon an assertion that the Debtor "knowingly and fraudulently concealed property of this bankruptcy estate after the date of the filing of the petition." The Plaintiff's allegations in the Second Count mirror the allegations made in the Complaint's First Count, except for the claim that the concealment occurred after the Petition Date.  As such, the findings of fact and conclusions of law regarding the First Count, supra, apply with equal force to the same factual allegations contained in the Second Count.  The Debtor's post-petition conduct is discussed in paragraph E, immediately hereafter. For the reasons indicated in Part IV ( C), *supra*, and Part IV (E), *infra*, and because Plaintiff has failed to establish that the Debtor acted with the requisite intent to hinder, delay, or defraud creditors or the Trustee, judgment shall enter for the Debtor on Count Two.

### E. COUNT FOUR- Section 727(a)(4)(A) - False Oaths and Accounts.

In the remaining Count of the Complaint, Count Four, the Plaintiff alleges the Debtor knowingly and fraudulently made one or more false oaths or accounts in connection with his bankruptcy case, and therefore should be denied his discharge pursuant to Section 727(a)(4)(A). The Fourth Count alleges various omissions and false negative responses in connection with the Debtor's bankruptcy schedules, and false testimony during his Section 341 testimony as follows:

    a. [The Debtor] [f]ailed to list the Note and Mortgage on Schedule B as personal property. In response to Question B 16 regarding accounts receivable the Defendant answered "None". In response to Question B18 regarding other liquidated debts owed to him the Defendant answered "None".;

    b. Failed to disclose the Divorce, which was still an active case. In response to Statement of Financial Affairs # 4 the Defendant answered "None";

    c. Failed to list Ms. Deedon as a creditor;

    d. At the meeting of creditors on January 31, 2008 the Defendant answered "No" to the following questions:

        i. "Are there any additions or corrections that need to be made" with regard to his Schedules and Statement of Financial Affairs previously filed with the Court;

        ii. "Does any one owe you any money?"

    e. At the meeting of creditors on January 31, 2008 the Defendant answered "Yes" to each of the following questions:

        i. "Is all the information in those documents true, complete and accurate?"

        ii. "Have you listed all your assets?"

        iii. "Have you listed all your creditors?"

Complaint, Count Four, ¶ 13.

In order to deny discharge under Section 727(a)(4)(A), the plaintiff must establish that:

    (1) the debtor made the statement under oath,
    (2) such statement was false,
    *(3) the debtor knew the statement was false,*
    *(4) the debtor made the statement with fraudulent intent, and*
    (5) the statement related materially to the bankruptcy case.

E.g., In re Aiello, 173 B.R. 254, 257 (Bankr. D. Conn. 1994) (*quoting* In re Wolfson, 139 B.R. 279, 287-88 (Bankr. S.D.N.Y. 1992)) (emphasis added). See also In re Maletta, 159 B.R. 108, 112 (Bankr. D. Conn. 1993). Statements made in a petition and schedules are

covered by Section 727(a)(4), and Section 341 testimony is also covered. In re Maletta, supra,159 B.R. at 112; In re Kilson, 83 B.R. 198, 202 (Bankr. D. Conn. 1988). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." Republic Credit Corp. I v. Boyer (In re Boyer), 367 B.R. 34, 45 (Bankr. D. Conn. 2007), aff'd, 384 B.R. 44 (D. Conn.2008).

Once the objecting creditor meets its burden of proof and has produced persuasive evidence of a false oath or accounting, the burden of production shifts to the debtor to come forward with some credible explanation. E.g., In re Maletta, supra,159 B.R. at 112; In re Arcuri, 116 B.R. 873, 884 (Bankr. S.D.N.Y. 1990). It is clear, and in large measure the Debtor candidly admitted, that he made certain material statements under oath that were false, and that in some instances he knew certain of those statements to be false at the time he made them. See, e.g., Tr. at 2:48:15 - 2:57:00. Accordingly elements (1), (2), and (5) are satisfied, and with regard to several representations, element (3) is satisfied as well. However, the Debtor credibly testified that no statement or account was made with an intent to defraud. He testified that his response "No" to the question "Does anyone owe you any money?" he believed to be true (Tr. at 2:55:14) as Kilcullen, his attorney, had previously advised him "not to get into it, not to disclose the Note to Katz [the Trustee], as it was a marital asset and . . . he didn't think would have to be included . . . just pay your ex-wife and don't even bring this up." Tr. at 2:04:16 - 2:06-44. The Debtor further testified that " I did not understand this Note due and payable in 2011 was an issue. If I thought 'yes' was truthful,

I would have answered 'Yes'". Tr. at 2:32:45. See also Tr. at 2:55:14 ("It was truthful").[7] By way of further example, and testifying with regard to answers he acknowledged to be false, including many rapidly asked routine questions, the Debtor explained his counsel had told him to listen to the answers of debtors who preceded him at the Section 341 meeting, stating:

> at that point I was just barely hearing [the] questions, I'm just giving the answers I was told to give by a very rude, arrogant attorney, who [10 minutes earlier] told me this is exactly what you say

Tr. at 2:33:05. Regarding the question "Is all the information in those documents true, complete and accurate," to which the Debtor responded "Yes," Kilcullen had just told him to answer just like the other debtors, that "the stuff that got filed is the same stuff you submitted" [that is, the same as the Questionnaire, Exhibit N] . . . just answer 'yes'".[8]

---

[7]To another critical question - "Have you listed all your creditors?" – the Debtor credibly testified "to the best of my knowledge, that's the truth." Tr. at 2:49:49. To the question – "Have you listed all your assets?" – the Debtor credibly testified "I'm not purposely lying on that question," Tr. at 2:49:37, as he believed he had listed all assets required to be listed.

[8]The Debtor's credible testimony concerning the situation he found himself in at the Section 341 meeting illustrates his state of mind at that time, and evidences no intent to defraud on his part, but rather, an intent to follow the advice of his counsel, however, misguided that advice may be. The Debtor testified:
THE COURT: The earlier question "Did you review and sign the Bankruptcy Petition and Schedules before they were filed with the Court". Did Attorney Kilcullen tell you to testify falsely in that regard?
THE DEBTOR: Yeah, he said the stuff that got filed was the same stuff you submitted and, even though you don't have the papers, I have the papers at my office, I don't have them here, but we went over those forms – just answer "Yes" to these questions  – as I'm listening to testimony before we go ahead. He's telling me how to answer this question, how to answer that question, how to answer that question.
THE COURT: In other words, you are sitting there listening to others testifying?
THE DEBTOR: Right.
THE COURT: And you hear that?
THE DEBTOR; Right.
THE COURT: And he says, just answer "Yes", or words to that effect?
THE DEBTOR: Yes, exactly.
THE COURT: Now, I'm putting words in your mouth, but you stop me if . . .
THE DEBTOR: No, those are very accurate words. Listen to what she [the Trustee] wants to hear, that's how you answer that question, that's how you answer that question.

The ultimate determination of the Debtor's entitlement to a discharge turns on element (4) – whether the Debtor made the statements with fraudulent intent. A statement is not deemed to be made with fraudulent intent simply because it is false. In re Shallow, 367 B.R. 48 (Bankr. D. Conn. 2007). Furthermore, a "statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth."  In re Maletta, supra, 159 B.R. at 112.  Knowingly and fraudulently mean "an intentional untruth in a matter material to the issue which is itself material." Kilson, supra, 83 B.R. at 202 quoting In re Robinson, 506 F.2d 1184, 1187 (2d. Cir. 1974); In re Maletta, supra, 159 B.R. at 112.  The Court may consider a debtor's education, business experience, and *reliance on counsel* when evaluating the debtor's knowledge of a false statement.  Id.

Upon a detailed review of the evidence presented in this proceeding, having considered the testimony and demeanor of the Debtor, and having found the Debtor's testimony credible, the Court concludes the Plaintiff has failed to establish by a preponderance of the evidence that the Debtor, in, or in connection with his bankruptcy case, made a false oath or account *with fraudulent intent* as to a material matter, or a *fraudulent* omission of a material matter, sufficient to warrant discharge denial pursuant to Bankruptcy Code Section 727(a)(4).  And, in light of the nature and extent of the advice of counsel he received, the Trustee has not established that the Debtor acted with reckless disregard for the truth.  Accordingly, judgment shall enter for the Debtor on Count Four.

---

That's the spirit of that conversation.

Tr. at 2:56:45 - 2:57:45.

13

## V. CONCLUSION

The Plaintiff has failed to establish that the Debtor acted with the requisite fraudulent intent of Sections 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A). Accordingly, the objections to the Debtor's discharge as set forth in the Complaint based upon those sections are **OVERRULED** and **DENIED**. This Memorandum of Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052. A separate Judgment in favor of the Debtor-Defendant shall enter simultaneously herewith.

Dated: October 15, 2009                                                                 BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
Chief United States Bankruptcy Judge